## THE PEOPLE *v.* AUGUSTUS P. BEIGLER.

The jurisdiction conferred on the police justice of the city of Buffalo, by section thirty-five, chapter two hundred and thirty of the Session Laws of eighteen hundred and fifty-three, is only exclusive in respect to the other justices of said city, and does not take away the power of a coroner of the county of Erie to issue process, and to commit to prison under the provisions of the Revised Statutes.

Upon a question of bail before indictment on a charge of murder, where the accused, having been committed by the coroner, is brought before a justice of this court on *habeas corpus*, examinations before the coroner may and should be looked into, to ascertain whether a crime has been committed, and, if so, the strength of the proofs in support of it; and if such examinations show that the crime, if any, does not exceed the grade of manslaughter, and a fair doubt exists whether the defendant has committed any felony, bail should be taken.

ON the 6th day of January, 1857, at the city of Buffalo, on the petition of the defendant, a writ of *habeas corpus* was allowed by the said justice, directed to the sheriff of the county of Erie, commanding him to have the body of the defendant, with the time and cause of the defendant's imprisonment, before said justice at the old court-house in said city, on the eighth day of said month. At the time and

place specified for the return of the writ, the defendant was brought before the said justice by the sheriff, and the sheriff returned to the writ that he detained the defendant by virtue of a warrant of commitment, a copy whereof was annexed to the return, and the original was produced. The warrant purported to have been issued by S. E. S. H. Nott, a coroner of the county of Erie, on the 3d day of January, 1857; was directed to the sheriff, &c., of said county; and after reciting that the defendant had been charged, upon inquisition taken before said coroner, on the 23d day of December, 1856, on the oaths of six persons, naming them, with having, on the 19th of December, 1856, killed and murdered one Julia Rosendale and infant, at the city of Buffalo; that the defendant had been brought before the coroner to answer the charge; and that upon the examination on oath, in the presence of the defendant, of several persons, whose names were given, and on the examination of the defendant without oath, &c., it appeared that said crime had been committed, and that there was probable cause to believe the defendant guilty thereof, commanded the sheriff, &c., to convey and commit the defendant to jail, there to remain until he should be discharged by due course of law. The defendant made and presented an answer to the return, duly verified by his oath, denying that the coroner had any right, authority or jurisdiction to take the examination of the defendant, or to commit him to prison, for the reason, as the defendant was informed and believed, and therefore alleged, that the complaint was made to and before the coroner in the city of Buffalo; that the warrant for the appearance of the defendant was issued by the coroner in the city; and the examination of witnesses on the charge was conducted within the city; and that at said times the police justice of said city was not absent therefrom, and was able to hear the complaint and take the examination. The defendant further alleged in his answer that he was not guilty of the offence charged in the warrant, or of any other criminal offence. The inqui-

sition referred to in the warrant of commitment, taken before the coroner, with the examination of witnesses sworn and examined on that occasion, and the subsequent examination of witnesses before the coroner upon the examination of the defendant, also referred to in the warrant, were produced for use on the hearing upon the return and answer to the writ of *habeas corpus ;* and the hearing was then and there had.

*E. Cook,* for the defendant.

*J. M. Humphrey* (District Attorney), for the people.

T. R. STRONG, J.—The first question discussed at the hearing arises upon the denial by the defendant of the authority of the coroner to take the examination of the defendant upon his arrest upon the coroner's warrant, or to commit the defendant to prison. This denial of authority is based upon the assumption that the provisions of the Revised Statutes, in the article entitled " Of coroners' inquests " (2 *R. S.,* 743, §§ 6, 7), declaring that if the jury find that any murder, manslaughter or assault has been committed, and the party charged with such offence be not in custody, " the coroner shall have power to issue process for his apprehension, in the same manner as justices of the peace ;" and that " the coroner issuing such process shall have the same power to examine the defendant as is possessed by a justice of the peace, and shall, in all respects, proceed in like manner," as well as any common law authority which a coroner may possess in such a case, are, with certain exceptions not embracing the present case, abrogated, as to an examination and commitment of a defendant, by certain provisions in the charter of the city of Buffalo, relating to the powers of the police justice of that city. The latter provisions are to be found in *Laws of* 1853 (496, §§ 35, 36). By section thirty-five, the police justice " shall have sole and exclusive jurisdic-

The People *v.* Beigler.

tion in the city to hear complaints and take examinations in criminal cases, except as is otherwise provided by this act." By section thirty-six, " warrants for the arrest of persons charged with crime may be issued by any justice of the peace in the city, but shall be made returnable before the police justice. During the sickness, absence or inability of the police justice, or a vacancy in that office, they shall exercise in all criminal matters and proceedings the same power and jurisdiction, &c., as justices of the peace in towns." These sections manifestly were intended to relate only to justices of the peace of the city; and to confer upon the police justice sole and exclusive jurisdiction, for the purposes named, only in respect to the other justices of the city. The provision in section thirty-six, that warrants may be issued by any justice of the peace in the city, but shall be made returnable before the police justice, and the omission of a like provision for the return of their warrants as to coroners and other officers having power to issue warrants and take examinations in criminal cases, clearly show that it was the justices of the peace in the city, other than the police justice, whose powers were designed to be curtailed by the previous section, giving the police justice exclusive jurisdiction. If the position of the defendant was sound, those two sections would take away the general powers of the justices of this court, and of the county judge of the county of Erie, within the city of Buffalo, in respect to the examination of offenders and their commitment for trial, declared in 2 *Revised Statutes* (705, § 1), as well as those of coroners of that county. Indeed, all those officers would virtually be divested of all authority as to the arrest of offenders in that city, when there was a police justice able and ready to act, as they could not make their warrants returnable before the police justice, nor themselves proceed to take examinations, &c.

It is insisted, on the part of the defendant, that as the powers of coroners, by the statute, to examine defendants in the cases specified are the same as is possessed by justices of

the peace, that their powers are to be measured by those of justices in the locality where coroners are called to act; but I think it is plain that the legislature intended, by the section declaring the powers of coroners, that they should be as full and ample as those of justices of the peace generally throughout the state.

If the coroner was not authorized to examine or commit, the defendant would not necessarily, as is conceded, be discharged. The *Revised Statutes* (*vol.* 2, *p.* 568, § 43) declare that if, on the return to a *habeas corpus*, the party imprisoned " appears by the testimony offered with the return, or upon the hearing thereof, to be guilty of a criminal offence, although the commitment be irregular, the court or officer before whom such party shall be brought shall proceed to let such party to bail, if the case be bailable and good bail be offered, or, if not, shall forthwith remand such party."

It is next made a point by the defendant's counsel, that upon the merits of the charge against the defendant there was not sufficient evidence to warrant the commitment, and he should therefore be set at liberty. The counsel contends that the merits of the case, as presented by the testimony taken before the coroner, may be reviewed on *habeas corpus*, and if, in my opinion, the charge against the defendant is not sufficiently proved, I may wholly discharge him. It is not necessary, in the view I take of the case, to decide whether the doctrine thus broadly stated can be sustained; for, assuming that it is correct, I am satisfied that upon the case made by the proofs an entire discharge of the defendant ought not to be granted. A brief general outline of the case, upon the testimony, may properly here be given. It is, that the deceased, Amelia Murr, lived at the house of the defendant, in Rochester, as a domestic, from about a year ago last September to about the following March; that she then went to Mrs. Moore's, of that city, a seamstress, the situation having been procured for her by the defendant; that she remained there until about September last, when

she went to Buffalo and there remained up to her death, on the twenty-first of December; that for the entire period she was there the defendant visited her at intervals of about three or four weeks; that she was then pregnant; that while there she was called Rosendale; and the defendant was introduced to Mrs. Mercer, the woman with whom she boarded, as Doctor or Mr. Rosendale, her uncle; that he stated to Mrs. Mercer that the husband of the deceased was in California; that while the deceased was at Buffalo, the defendant frequently called at the house of her parents, in Rochester, and on one or more occasions represented to her mother that Amelia was married to Frederick Rosendale, whom he knew, and she was happy with him, and was in Erie; that in the evening of the nineteenth of December last, the deceased was left alone at her boarding-house, with the exception of a little child placed in her care for the evening, and was then in comfortable health for a woman in her condition, except she had a cough and complained of difficulty of breathing; that in the course of the evening the defendant called upon her, and they went together to the Railroad Hotel in Buffalo; that the defendant had, about four or five o'clock in the afternoon of that day, been to that hotel and engaged a room for himself and lady, or wife, who, he stated, was up at her friend's; that the defendant entered his name on the hotel register, "D. A. Biglow and lady;" that they occupied the room part of the night; that about twelve o'clock in the night the defendant came into the bar-room and said his wife was sick with the asthma and could not lie in bed; that subsequently he ordered a carriage to take her back to her friends; that she was taken to her boarding-house, and carried into the house, being unable to walk and in great pain; the defendant gave directions to have her made as comfortable as possible, also sending for a physician, and left some funds and promised to pay well for taking care of her; the defendant also directed Mrs. Mercer to write to him every

other day as to her condition, and wrote his address and left it with Mrs. Mercer, being, " Mr. Frederick Rosendale, care of Dr. A. P. Biegler." The deceased suffered great pain, from difficulty of breathing and otherwise, until Sunday evening then next, when she was delivered of a child of about seven months' gestation, which was dead at delivery, and in less than an hour afterwards died. Several physicians, who were examined, testified to their having made a *post mortem* examination of the body of the deceased mother, and to appearances of the body and marks upon the child, indicating, in the opinion of some of them, the use of instruments before the child was delivered, and that the deaths of the mother and child proceeded from such a cause; others formed the opinion that the deaths were from natural causes. Various other circumstances on both sides of the case, having an important bearing upon the question of the guilt or innocence of the defendant, are disclosed by the testimony; but enough of the case has been stated for the purpose of this decision. It will be seen, I think, from this general view, that the defendant could not, with propriety, be unconditionally set at liberty.

The remaining question discussed before me is, whether the defendant should be admitted to bail. No doubt can exist in regard to my power to release him on bail; it is a question of sound judicial discretion whether that power shall be exercised, to be guided by adjudged cases. It is not necessary in this case to go into an extended examination of those cases. If the examinations taken, and which are before me, show that, although the defendant is charged with murder, his crime, if any, does not exceed the grade of manslaughter, and a fair doubt exists whether the defendant has committed any felony, I think they clearly require that bail should be taken. The general doctrine on this subject will be found fully stated in *The People* v. *McLeod* (1 *Hill*, 376); and notes to that case (3 *Hill*, 667, 672), in the extended and valuable notes there to be found, wherein

are collected many of the cases; *The People* v. *Van Horne* (8 *Barb.*, 158), and cases there cited; *The People* v. *Hyler and others* (2 *Park. Cr. R.*, 570). All the cases agree that, upon the question of bail before indictment, examinations before the coroner may and should be looked into to ascertain whether a crime has been committed, and, if so, the strength of the proofs in support of it; and I have therefore, with that view, carefully read and considered the examinations in the present case, which are very voluminous. There is much in them calculated to excite the sensibilities; but it has been my earnest purpose throughout the investigation to act upon the case with coolness and deliberation, indulging, so far as I could properly do so, a presumption of innocence, and, so far as my action will affect his rights, to render to the defendant strict and impartial justice. He is entitled to the benefit of the law fairly administered, while he is responsible to the law for his conduct.

The Revised Statutes, in regard to murder (*vol.* 2, 656, § 4), provide that "the killing of a human being, without the authority of law, by poison, shooting, stabbing, or by any other means or in any other manner, is either murder, manslaughter, or excusable or justifiable homicide, according to the facts and circumstances of each case." By section five, "such killing, unless it be manslaughter, or excusable or justifiable homicide, as hereinafter provided, shall be murder in the following cases:

"First. When perpetrated from a premeditated design to effect the death of the person killed, or of any human being.

"Second. When perpetrated by any act imminently dangerous to others, and evincing a depraved mind, regardless of human life, although without any premeditated design to effect the death of any particular individual.

"Third. When perpetrated, without any design to effect death, by a person engaged in the commission of any felony."

Section nine of the Revised Statutes (2 *R. S.*, 661), in regard to manslaughter, as originally passed, prescribed that

" every person who shall administer to any woman pregnant with a quick child any medicine, drug or substance whatever, or shall use or employ any instrument or other means, with intent thereby to destroy such child, unless the same shall have been necessary to preserve the life of such mother, or shall have been advised by two physicians to be necessary for such purpose, shall be deemed guilty of manslaughter in the second degree." This section was amended, in 1830, by inserting, between the word " shall " and the words " be deemed," the words " in case the death of such child or of such mother be thereby produced." In 1845 (*Laws of* 1845, 285) an act to punish the procurement of abortion and for other purposes was passed, which was amended the following year (*Laws of* 1846, 19), and which act, as amended, embraced the foregoing provision, extended somewhat by some additional words, and repeals section nine aforesaid. The provision, as it now stands, although not so declared in terms, is, and must be regarded, as virtually an amendment of the Revised Statutes, a substitute for section nine and occupying its place. This case does not call for a particular examination of the foregoing provisions; it is sufficient to observe, in respect to them, that if an offence be manslaughter by the Revised Statutes it cannot be murder, the language of section five in regard to murder being, that the killing, "*unless it be manslaughter,*" &c., as hereinafter provided, shall be, in the cases specified, murder. (*Darry* v. *The People,* 2 *Park. Cr. R.,* 606; *The People* v. *Johnson,* 1 *Park. Cr. R.,* 29.)

The theory of the prosecution in this case is, that the death of the mother and the infant were occasioned by the employment of instruments to produce an abortion, which is the only one involving crime the evidence tends to sustain; and upon this theory, if a felony has been committed, it comes directly within the statue of 1846, above referred to, and is manslaughter only.

The People *v.* Beigler.

Other reasons might be stated, showing that the crime, if any, does not exceed that of manslaughter, but that already given is sufficient.

It has already been stated that the depositions disclose a conflict of opinion between the physicians who were examined, in regard to the cause of the deaths; some attributing the deaths to the use of instruments, and others to natural causes. This conflict produces some doubt as to the defendant's guilt. The doubt is as to a crime having been committed, and not as to the author, if there has been a crime.

Without further extending this opinion, I will merely add, that on account of this doubt, in connection with the fact that the true grade of the offence, if one has been perpetrated, is not murder, but manslaughter, I have come to the conclusion, after much anxious consideration, that the case is within the established rule requiring bail to be taken.

I shall accordingly admit the defendant to bail, upon his executing a proper recognizance, with four sureties of sufficient ability, to be approved by me, in the penalty of $12,000.